Our first case of the day is United States v. Jesse Pennington. We'll hear first from Ms. Bighton. Thank you, and may it please the Court. Sentencing courts are required to sentence the person, not just the crime. Here, the District Court made three separate procedural errors in sentencing Jesse Pennington. Each is an independent ground for relief, but all three relate to the overarching problem of the Court exclusively focusing on Ms. Pennington's offense to the exclusion of everything else. I'm going to talk about the errors in a slightly different order than the brief, because while the false comparison error was really the most pervasive here, the timing error is really just the easiest to explain. Is it correct, however, Ms. Bighton, that the guidelines here were calculated correctly? The guidelines here were calculated correctly. And the defendant received a guideline sentence? That's correct, and we're not making an argument that the sentence was substantively unreasonable. At a resentencing hearing, with the judge considering the factors appropriately, as you must under 2553A, if he reaches the same sentence, then we, of course, would not have a complaint at that time. But in terms of the procedural errors that he did make at the sentencing that happened, again, the timing error, so the judge essentially precisely doubled the amount of time that Ms. Pennington was involved in drug dealing. It was one year. He said it was two. That was wrong, and the government acknowledges that was wrong. It was two episodes, two sort of groups or clusters of deals about a year apart. Is that right? Exactly, and the judge said it was two years from 2014 to 2016. And the judge corrected that in the written explanation of the sentence, correct? Correct. Four days after sentencing, in the written explanation, he said he had the correct dates. So why isn't that sufficient? It's not a tension between the oral and written pronouncement of what the sentence is. It's just a clarification or correction of his explanation? Well, at that point, the sentence was imposed, and he didn't only say that it had been a two-year period. He also said that he actually relied on that information. He was comparing. He had this really offense-only comparison of Ms. Pennington and Mr. Dotson, and on Ms. Pennington's side, he was considering a two-year period of drug dealing that he explained at the sentencing hearing for Mr. Dotson. It was a single deal with this undercover officer, and so he both discussed inaccurate information and relied on it. So that's a clear ground for relief. Is the judge here whipsawed because he's trying to put the different defendants on rungs on a ladder? He's trying to say who's more culpable or less culpable, and he's slotting Pennington above Dotson. If he had not done that, would the argument be that he wasn't appropriately following the factors? No, Your Honor, and I certainly don't want to suggest that there's any problem with comparing her with her co-defendants. Good. We see plenty of arguments. Well, that's not a problem. The other effect. The problem here is that he made this comparison without actually making the comparison that's required under Gaul and under the sentencing statute because he only looks at one thing, and that is the number of deals to the undercover officer in this case as the undercover officer is working this deal and doesn't even acknowledge that there would be other factors that he would need to compare to have a true comparison between the defendants. Now, in both our brief and the government's brief, there's been some discussion of kind of making the comparison that didn't happen, but the real procedural error here is that the court did not attempt that comparison. He did not discuss any other factors. He simply said that because Mr. Dotson had served roughly seven to eight months in pretrial detention before getting his time served sentence and Pennington had had more deals to this undercover than him, that she would need at least that and then some as part of her sentence without talking about the many other factors that make up a sentencing decision that made them not similarly situated. Did Dotson and Pennington have different supervised release conditions? You know, I did not look into that. I suspect they're pretty similar based on the way that we do things in the Western District, but I don't know about that. So, you know, again, they really weren't similarly situated. This is an apples to oranges problem, but the judge didn't try to make that finding, and so that is a procedural error. This fight, I guess I'm troubled by this argument because I look at the debate in the briefs, and one could argue the relative culpability of Dotson and Pennington forever, inconclusively, and the judge has to make a decision. And I guess I'm just wondering, how much does the judge have to explain to satisfy you? I think he has to go beyond culpability, Your Honor. I mean, certainly we have debated culpability because he took such a narrow view of culpability as meaning number of deals to the undercover officer described in the pre-sentence report, but he did not acknowledge the possibility of criminal history differences, of life circumstance differences, of all the other things that go into a sentencing decision to decide whether or not they're similarly situated. And then, of course, there's sort of this baseline problem of they weren't similarly situated because Mr. Dotson was incarcerated throughout the pre-sentencing period based on the government's motion to detain him, whereas Ms. Pennington wasn't. So in sentencing, he got time served, and so just as an initial matter, that time served sentence, what he happened to serve as a period of pretrial detention, it's hard to extrapolate from that what is appropriate for Jesse Pennington, who is a unique individual himself. Well, that number for Dotson could be random in essence, but didn't the judge also say something to the effect that this is roughly an appropriate sentence for you in this case to Dotson? In the end, sort of. I mean, the discussion in Dotson was a lot more in-depth than it was in Ms. Pennington's case, but in the end, he said that the seven to eight months was sufficient. He would accept the defense argument that there wouldn't be any purpose to continued incarceration for him. And here, there's also this third issue, although again in the brief, it's not listed as the third issue, of the judge calling Ms. Pennington an inaccurate historian, and really the inaccurate information there is what that means. I mean, that's of course an opinion, as the government has pointed out, but it means that he believes that she has provided inaccurate information about her past to the PSR reporter, and that was really baseless. So in addition to having five kids, and two of them are disabled, and having an insignificant criminal history, she had what can only be described as these really appalling life circumstances, but the judge was able to say, you know, you've had a difficult upbringing, but you're not necessarily a reliable historian, so I'm going to go straight to this comparison of you with Mr. Dotson, who I consider less culpable based solely on the number of deals with the undercover officer. And so that is a third ground for relief here. And I will save the rest of my time for rebuttal. All right. Thank you, Ms. Pennington. For the government, we'll hear from Mr. Anderson. Good morning, Your Honor. My name is Robert Anderson. I'm the Assistant United States Attorney assigned to this matter. I have the privilege of representing the United States. There are just two dispositive points to this whole matter. There is nothing that the appellant raises or complains of that actually impacted her sentence in a material way, these issues she raises, and the judge followed the correct sentencing procedure, did not err, certainly did not plainly err, in the sentencing procedure he employed. Procedurally, he opposed the sentence within the guidelines, in the bottom end of the guidelines, at the low end of the advisory guidelines. He followed the correct procedural framework in doing that. He calculated the guidelines correctly. They don't dispute that. Gave the parties an opportunity to make their arguments. They don't dispute that. Considered the sentencing arguments. That's clear from the record. And he made observations about the various factors, the 3553A factors, those very factors that the defense or the appellant says that he didn't consider her children, her past history, her difficulties growing up. He considered those in weighing and imposing the chosen sentence. But part of that 3553A consideration and his imposing that sentence, let's look at the context of what he was dealing with here. They were asking for a sentence of mere probation, which was far exceeding below the guidelines. And in explaining why he was not going to agree with a sentence such as that, he referenced her role. He looked at her culpability, her role, and the length of time that she was involved in the offense. Where is she right now? She is out pending the appeal. They filed a motion to allow her to stay out pending the appeal, and so she's not in custody. The five kids are in various places, right? I'm afraid I don't know where the kids are, but actually that was one of Judge Peterson's points during sentencing was that while she's doing these various transactions, involving seven transactions with an undercover officer, dealing drugs, there was little concern about where her children were or what was going on with her children at the time. That was an observation by the judge. It was not plain error for Judge Peterson to compare her circumstances to that of a less culpable defendant, Mr. Dotson. When you use the phrase plain error, Mr. Anderson, are you suggesting there was a failure to object that triggers plain error review? Correct. Given that the challenge here is to what the judge did and said after the parties had been heard, we usually don't expect people to raise objections or take exceptions after that. If they felt there was an incorrect fact stated by the judge, they had the opportunity to raise that. There was no such thing raised. There was no objections to any of the calculations or the PSR ahead of time. We know that, but we've generally not applied plain error forfeiture standards to appeals based on the judge's explanation of the sentence. I understand. I'm just saying they did have the opportunity to object at the time of sentencing, but if you decide that this is not a plain error, my argument is there's no error, period, whether it's plain or otherwise. It was not error in what the judge did at sentencing, period. What do you make of the judge's statement that Ms. Pennington is an inaccurate historian or unreliable historian? As I explained in my brief, we don't exactly know what he meant. He didn't go on to explain in detail what that meant, but I think that that was a mere opinion, comment, observation on his part. But nonetheless, Ms. Fife said that there were no facts in the record supporting his comment to that effect. In the brief, I note at least a half a dozen examples of where she was incorrect and made misrepresentations, misstatements about her own past and her history. Number one, she said she had memory issues. She didn't know or recall what medications she had been on either in her youth or more currently when she was taking medications. She claimed that she was hospitalized at the age of 20, but there were no hospital records corroborating that. She claimed she had no memory of actually or knowingly using cocaine, yet she tested positive when she was on pre-trial release. There were discrepancies in her claim that she finished high school, but the high school said she did not. These are all laid out in the PSR as well? I'm sorry? These are all laid out in the PSR as well? In her history, yes. And the judge did not go into this detail explaining these, but these are in the PSR. Her claim that she attended MATC Technical College, no record she was ever a student there, contradictory information about her employment. So there's a plethora of information that she is not accurate in terms of her history. So there was a basis for the judge to make a comment such as that. Mr. Anderson, footnote three of your brief talks about Judge Peterson perhaps misreading the date as October 14th of 2015. The defense argument here is that at that section of the transcript, pages 15 to 16, it wasn't just a misreading of the day. You've got Judge Peterson saying as early as October 2014, sustained a period of time of almost two years, fall of October 14, and long period of drug dealing. It sounds like more than a misreading of a date. It sounds like, at least in his mind at the time that he was pronouncing sentencing, he's thinking it's two years. And, again, I'm only speculating as to where he got the 14, because the 14, October 14th was 2015, where it came from. I'm only speculating as to that. But my point, and the important point, the salient point here, is he wasn't relying on a specific date to calculate the amount of drugs that she had dealt over a period of time, which we often do have in some cases. Our cases show the defendant dealt an ounce of cocaine every week for this period of time. He didn't do those kind of calculations. His point, his only point that was important here, the material point that he was making, was that she engaged in an extended period of time. There were seven transactions completed and attempted, a number of transactions, and he used the words a number of times, extended period of time. He even said, even if you weren't continuously doing this, even if this wasn't continuously going on, this was an extended period of time in comparison to, such as Mr. Dotson, who was only on one occasion a delivery boy. That was his point, that she maintained her involvement in the offense over a number of, not only a number of occasions, a number of times, but a number of different substances, the MDMA, the suspected MDMA, and the cocaine base attempt transaction, and her offer on another occasion to the undercover officer to supply cocaine or cocaine base to him, to go in with him on that from another source, Mr. Britton. So this wasn't new to her. Mr. Anderson, it's hard to read pages 15 and 16 of the transcript as anything other than just an error by the judge, corrected later in the written explanation, but neither side spoke up to correct the judge, right? The government stayed silent as the judge misstated the facts, as did the defense. Correct. Government didn't speak up either, but that was because, again, it was his observation that she was involved in an extended period of time. The actual date didn't matter, and it didn't need to be corrected. Well, compare the facts in Welch against Lane, where the judge, if I recall correctly, said that the defendant had a prior record of armed robbery when, in fact, it was simple robbery without having been armed, and this court reversed the denial of relief and ordered a new sentence. The government has an obligation to try to correct those kinds of factual errors by judges as well, it seems to me.  In that case, that would make a difference, whether it was a simple robbery or an armed robbery. They're considered differently. A year of drug dealing versus two years of drug dealing. If the calculations were based on the two years, that would be true. And in any event, the court didn't. If I understand this correctly, the guidelines used only the most recent transactions, right? That's what I was just going to point out. But the judge, in his explanation, went beyond that, right? He's entitled to do that, but he needs to get the facts right. It's correct, but I'm saying those facts were collateral to his point that it was an extended period of time, and he did correct them in the statement of reasons. And he didn't rely on inaccurate information. It was a fact, only collateral. Pennington has not demonstrated that that reference affected the sentence in the calculation. It hasn't demonstrated her substantial rights or fairness, integrity, or reputation of the sentencing proceeding. It's been affected by that reference. Anything further? I'm sorry? Anything further? No, sir. Thank you very much, Mr. Anderson. Ms. Veit, rebuttal? Thank you, Your Honor. First, to just very quickly answer Judge Mannion's point, right now, Ms. Pennington's children are home with her. And then, in terms of the government's main argument here, that this just didn't impact the sentence, again, this discussion of two years was specifically in the context of putting her two-year offense, this erroneous two-year offense, on a scale with Mr. Dodson's offense, and weighing them to determine how the two compared with one another. And so, no, it did not impact the guidelines calculation, but it absolutely impacted the court's imposition of sentence. So we would ask for you to reverse the sentence and remand for resentencing so the judge can consider all of the appropriate factors related to Ms. Pennington. Thank you, Ms. Veit. Thank you, Mr. Anderson. The case will be taken under advisement.